IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Gregory Riley, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | No 15-cv-8221 |
| -*vs*- | ) | |
| | ) | *(Judge Alonso)* |
| Thomas Dart, Sheriff of Cook County, | ) | |
| Cook County, IL, and Dr. Melanie | ) | |
| Watson-Montgomery, | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT COOK COUNTY'S LOCAL RULE 56.1 STATEMENT

Plaintiff, by counsel, submits the following in response to Defendant's Local Rule 56.1 Statement of Material Facts.

1. Plaintiff Gregory Riley entered the Cook County Department of Corrections ("CCDOC") on November 7, 2013, and was transferred to the Illinois Department of Corrections ("IDOC") on December 22, 2014 (Ex. A Riley dep at 7:15-18; Ex. B Booking history).

RESPONSE: Agree.

2. Plaintiff was housed in Division 2, Division 8, and Division 10 of the CCDOC but he spent the most time in Division 10. (Ex. B Housing history, Ex. A Riley dep. at 11-12).

RESPONSE: Agree.

3. [a] Plaintiff was diabetic and also had neuropathy in his feet, which makes his feet swell and [b] hurt when he walks. (Ex. A Riley dep at 9) [c] Plaintiff was

homeless before entering the CCDOC and he has [d] never had any dental care. (Ex. A Riley dep at 22).

RESPONSE: [a] Agree.

[b] Objection, mischaracterizes the record. Plaintiff testified it was very painful to walk and, as a result, did a lot of sitting. Due to his physical condition, plaintiff was unable to be an inmate worker because he could not stand on his feet. (ECF No. 51-2 at 5, Riley Dep 9:9-22; 10:19-22; 11:15-17.)

[c] Agree.

[d] Disputed. ECF No. 51-4 at 22, Watson-Montgomery Dep 77:22-24. During plaintiff's evaluation on January 17, 2014, he reported his last dental visit was six months ago where he had a tooth extraction and a cleaning more than ten years ago.

**Dental Care at the CCDOC**

4. The policy in place for a detainee to see the dentist in 2013 and 2014 is set forth in Policy E-07 entitled, "Non-emergency Health Care Requests and Services." (Ex. F) Pursuant to the policy a detainee was to fill out a Health Service Request Form and drop it in the living unit's health service box dispensary. A nurse or other qualified health care professional then reviews the form and determines an appropriate disposition for the request. (Ex. F; Ex. C Montgomery dep at 59:2-6).

RESPONSE: Agree this is the stated policy.

5. Dr. Melanie Watson-Montgomery has been a dentist since 1988 and at Cermak since 2009 as a full time employee. (Ex. C. Dr. Montgomery dep 6: 5-14; Dkt #8 Ans. ¶7) She was the dentist in Division 10 during the relevant time period (Dkt. #8).

RESPONSE: Agree.

6. [a] She was there typically at work Monday through Friday and [b] she has an open door policy with the nursing staff that if they have someone they want her to see immediately who has pain or swelling and they will bring him in. (Ex. C Montgomery Deposition 150:4-13).

RESPONSE: [a] Agree.

-2-

[b] Disputed. Watson-Montgomery was unable to recall whether she constantly had walk-in dental patients in 2013-2014. (ECF No. 51-4 at 44, Watson Montgomery Dep. at 164:9-11.)

7. The dental clinic is next to and conjoined with the dispensary in Division 10 (Ex. C Dr. Montgomery dep at 164:24, 165:1-3; Ex. A Riley dep at 26: 7-11).

RESPONSE: Agree.

8. Plaintiff came into the dispensary every day to have his glucose level checked by the nurse. (Ex. A Riley dep at 16:17-23)

RESPONSE: Agree.

9. [a] On January 13, 2014, Plaintiff filled out a medical request form for his tooth. [b] The form was reviewed by a health care provider and given to the dental department on January 14, 2014 and he was scheduled for a dental appointment. (Ex. D Group Dental records at 1-2).

RESPONSE: [a]     Agree.

[b]     Agree that form was reviewed by a health care provider, but disagree that plaintiff was "scheduled for a dental appointment." A dental appointment was requested for plaintiff for January 14, 2014. (ECF No. 51-5 at 3, Plaintiff's Medical Records at 2.)

10. He was seen by Dr. Montgomery in Division 10, on January 17, 2014. (Ex. A Riley dep at 26:11-15; Ex. C Montgomery dep at 76-77; Ex. D Group Dental records at 3-5).

RESPONSE: Agree.

11. [a] At the January 17, 2014 examination, Dr. Montgomery performed an oral exam, took x-rays and recorded that Plaintiff had irreversible pulpitis in tooth 32. [b] She did not note any abscess or swelling in Plaintiff's mouth (Ex. C Montgomery dep at 154:3-7; Group Ex. D at 3-5)

RESPONSE: [a]     Agree.

[b]     Agree the medical records do not note an abscess, but plaintiff was diagnosed with irreversible pulpitis which means "the nerve inside the tooth has had inflammation in it for such a long time that the pulpitis is not

-3-

reversible." (ECF No. 51-4 at 26, Watson-Montgomery Dep 90:21-91:1.) During this visit Dr. Watson-Montgomery prescribed Amoxicillin (ECF No. 51-4 at 106), which is used to treat inflammation and infection. (ECF No. 51-4 at 25, Watson-Montgomery Dep 86:19-87:12.)

12. Dr. Montgomery made a referral in the electronic IRIS system for him to have a surgical extraction of tooth 32 because it was her clinical opinion that the procedure would be best performed and managed by an oral surgeon. (Ex. C, Montgomery dep at 154:1-13).

RESPONSE: Agree.

13. She did not extract tooth 32 because it was her clinical opinion that the procedure would be best performed and managed by an oral surgeon. (Ex. C, Montgomery dep at 154:1-13).

RESPONSE: Agree.

14. It is Dr. Montgomery's practice to refer out partial bony, soft tissue impactions and certain grossly carious wisdom teeth such as teeth nos. 1, 16, 17, and 32. (Ex. C Dr. Montgomery dep at 24:19-22; 25:5-7).

RESPONSE: Agree.

15. There is no written directive to the dentists directing which dental procedures must be referred out to an oral surgeon. (Ex. C Dr. Montgomery dep at 25:5-17)

RESPONSE: Agree.

16. In 2014 the dentists at Cermak entered the patient information into the computer system called IRIS for referrals, and they indicate whether the referral is for pathology or extraction and provide a narrative of why there is a referral (Ex. C Dr. Montgomery dep at 26:10-24).

RESPONSE: Agree.

17. The dentist is unable to schedule the exact date for the patient to be seen by the oral surgeon at Stroger. (Ex. C Dr. Montgomery dep at 28:8-11)

RESPONSE: Objection, mischaracterizes Dr. Watson-Montgomery's testimony. Dentists at the Jail have no control when a patient is seen by the oral surgeon.

(ECF No. 51-4 at 11, 13-14, 20, 38, Watson-Montgomery Dep 32:16-33:5; 39:5-23; 42:2-44:11; 67:6-14; 141:8-17.)

18. [a] The scheduling department at Cermak along with Stroger Hospitals oral surgery department assign the appointment dates. [b] Dr. Montgomery has no control over the time when oral surgery patients are to be seen. (Ex. C Dr. Montgomery dep at 42: 5-6) Nor can she control the movement or prioritization of detainees that must be moved off campus. (Ex. C Dr. Montgomery dep at 43:2-5)

RESPONSE: [a] Disputed. The Patient Scheduling Department at Cermak assign appointments at Stroger. (ECF No. 51-4 at 11, 13-14, 20, 38, Watson-Montgomery Dep 32:16-33:5; 39:5-23; 42:2-44:11; 67:6-14; 141:8-17.)

[b] Agree.

19. [a] Dr. Montgomery prescribed 10 days of Motrin and Amoxicillin and [b] directed the patient "PRN" which means upon request as he [sic] patient needs. (Ex. C Dr. Montgomery dep 86:5-22; 94:3-6; Group Ex. D pp 4-5).

RESPONSE: [a] Agree.

[b] Objection, misconstrues the record. "PRN" means Dr. Montgomery did not schedule a return clinic appointment for plaintiff Riley, but directed him to return to clinic "upon request" or "as needed." (ECF No. 51-4 at 27, Watson-Montgomery Dep. at 94:1-17.)

20. [a] The records indicate that in addition to prescribing the pain killers and the referral to the oral surgeon, [b] Dr. Montgomery made a follow up visit for Plaintiff on March 12, 2014. (Ex. D at 7).

RESPONSE: [a] Agree, but Dr. Montgomery also prescribed Amoxicillin (ECF No. 51-4 at 25, Watson-Montgomery 86:19-23), which is used to treat an infection and inflammation. (*Id.* at 29, Watson-Montgomery 102:17-20.)

[b] Disputed. Dr. Montgomery requested that plaintiff return to the dental clinic on March 12, 2014. (ECF No. 51-5 at 8, Plaintiff's Medical Records at 7.) Dentists do not schedule patients for clinic; it is the responsibility of Patient Scheduling. (ECF No. 51-4 at 11, 13-14, 20, 38, Watson-Montgomery Dep 32:16-33:5; 39:5-23; 42:2-44:11; 67:6-14; 141:8-17.)

21. [a] Plaintiff was seen March 25, 2014 by the oral surgeon at Stroger (Group Ex. E. at 2) The medical records from Stroger indicate there was no facial

asymmetry and no swelling of the lymph nodes and [b] no abscess was indicated. (Ex. C Dr. Montgomery at 151-152: 1-3)

RESPONSE: [a]　　Agree.

　　[b]　　Objection, lack of personal knowledge by Dr. Watson Montgomery. Moreover, on January 17, 2014, Dr. Watson-Montgomery prescribed Amoxicillin for plaintiff Riley which, in her practice, is used to treat infection and inflammation. (ECF No. 51-4 at 25, Watson-Montgomery Dep 86:19-87:12.)

22. [a] In March 2014, the oral surgeon looked at the x-rays and used his clinical judgment as to how long this patient could wait for the oral surgery (Ex. A Riley dep 26: 18-25, 27:1-21; Ex. C Dr. Montgomery at 152: 10-16). [b] The records state in pertinent part: "*the patient was given a Special Clinical Appointment to have tooth #32 removed under local anesthesia. The patient understood and left the clinic in good spirits with all questions answered…the surgical procedure was discussed with the Chief resident and Attending.*" (Ex. E Stroger records at p. 2).

RESPONSE: [a]　　Objection. This statement is not supported by admissible evidence and should be disregarded under Rule 56(c)(2) of the Federal Rule of Civil Procedure.

　　[b]　　Agree this is the medical record.

23. On May 4, 2014, Plaintiff put in a health service request form for his tooth. He was then seen May 7 and May 9, 2014 as a walk in to the dental clinic by Dr. Montgomery. (Ex. C Dr. Montgomery at 157: 1-20; 159:13-24; Ex. A Riley dep 31: 1-7; Group Ex. D at 7-8) She examined him and again prescribed Motrin and Amoxicillin for ten days. (Ex. C Dr. Montgomery at 121: 7-19, 122: 4-12; There was a second referral to the oral surgeon on both May 7 and May 9, 2014. (Ex. C Montgomery dep defense Ex. 1, and dep at 157:2-20)

RESPONSE: Agree.

24. [a] Plaintiff filled out a health service request form dated July 22, 2014, and was again seen on August 4, 2014 by Dr. Montgomery [b] who offered to not only renew his prescriptions but also offered to provide topical anesthesia to immediately alleviate any alleged pain. Plaintiff refused this offer to alleviate his pain. (Ex. C Dr. Montgomery dep at 162:1-9; Group Ex. D at 9).

RESPONSE: [a]　　Agree.

[b] Disputed. "She never offered to give me any anesthesia because I would not refuse pain medication because my teeth was – I was in pain. And if she would have given it to me, I would have taken it." (ECF No. 51-2 at 10, Riley Dep. at 31:15-18.)

25. Dr. Montgomery did call scheduling to find out that Plaintiff's oral surgery was scheduled for August 29, 2014. (Ex. C Dr. Montgomery at 161: 1-20) For security reasons, she could not tell the Plaintiff exactly when the surgery was to take place. (Ex. A Riley depositions at 80:24-25; Ex. C Dr. Montgomery at 134:21-22).

RESPONSE: Agree.

26. On August 29, 2014, the oral surgeon removed teeth 31 and 32 and the surgery was successful. (Group Ex. E Stroger Records p. 8; Ex. C Dr. Montgomery dep at 152: 17-24-153:8-15)

RESPONSE: Agree.

27. Plaintiff no longer has any pain in his teeth. (Ex. A Riley dep at 22:3-6).

RESPONSE: Agree.

**Standard Treatment of Care While Waiting for Wisdom Teeth Extraction**

28. As a dentist in Dr. Montgomery's experience, pain associated with wisdom teeth is intermittent and that is why they write "PRN" on the chart. PRN means "patient return as needed." (Ex. C Dr. Montgomery dep at 149:9-12; 93-94)

RESPONSE: Objection. The cited record does not support this contention.

29. The standard of care and protocol for treatment while waiting for a wisdom tooth to be extracted is observation with treatment of antibiotics and ibuprofen when necessary. And then "PRN." (Ex. K at 12-13 Dr. Randy Rabin's testimony from *Smentek v. Dart* 09 Cv 529 at 892 lines 10-25, 893:1-12; and Ex. L at 9 Dr. Meyer's testimony from *Smentek v. Dart* 09 cv 529 at 1142: 2-12; Ex. C Dr. Montgomery dep at 149:9-12)

RESPONSE: Disputed. Dr. Watson-Montgomery testified the treatment plan required extraction. (ECF No. 51-4 at 29, Watson-Montgomery Dep 102:11-103:20.) The purpose of Amoxicillin is to reduce inflammation prior to extraction

(*id.* 102:4-7), is not considered a treatment plan long-term (*id.* 103:8-10), and should not be prescribed for more than seven days. (*Id.* 87:3-10.)

30. Dr. Rabin testified that people who are given antibiotics for their teeth will respond differently and specifically he stated that he, "can give them antibiotics for a week and they'll come back and say, I don't even want the tooth pulled out, it feels find now, and they could be months with no pain whatsoever." (Ex. K at 5 Dr. Randy Rabin's testimony from *Smentek v. Dart* 09 cv 529 at 830 lines 11-24)

RESPONSE: Agree this is his testimony.

31. Dr. Montgomery testified that in her experience the wait time for oral surgery varies among detainees and some of her patients who have a toothache received Motrin and Amoxicillin and then never come back to the clinic again. (Ex. C Dr. Montgomery dep 147:17-20).

RESPONSE: Agree this is her testimony.

32. When she sees a detainee, Dr. Montgomery has no idea how long they will be in the CCDOC. (Ex. C Dr. Montgomery dep at 148:1-3).

RESPONSE: Agree, but not material.

33. She testified that it is her understanding that once a detainee is scheduled in the IRIS system for oral surgery and they are released from CCDOC they can follow up and attend their appointment in the future. (Ex. C Dr. Montgomery dep 149:12-19).

RESPONSE: Agree.

34. Dr. Meyer, the former chief dentist for the Federal Bureau of Prisons that testified at the *Smentek* trial that the wait on the outside at his clinic for patients on state funding is nine months and that the standard of care for the patient while they wait for extraction is to be seen episodically and to control any pain when the need arises with antibiotics and pain medication. (Ex. L at 9 *Smentek v. Dart*, 09cv0529 at 1192 lines 1-17).

RESPONSE: Objection. Dr. Meyer was not disclosed as an expert witnesses under Rule 26(a)(2) and the line of cited testimony was sustained by the district judge because the court found "it is not helpful. I don't know what kind of clinic this is. I don't know how it is funded, resources so I'll sustain." (ECF No. 51-13 at 10, Meyer Testimony at 1142: 22-24.)

35. Dr. Montgomery relies on the opinion of the oral surgeons at Stroger regarding whether the scheduling of the detainee must be immediate or can be scheduled for a routine extraction. (Ex. C Dr. Montgomery dep 152:10-16)

RESPONSE: Disputed. Dentists at the Jail have no control over the scheduling of patients for clinic; this is the responsibility of Patient Scheduling. (ECF No. 51-4 at 11, 13-14, 20, 38, Watson-Montgomery Dep 32:16-33:5; 39:5-23; 42:2-18; 67:6-14; 141:8-17.) In addition, Dr. Watson-Montgomery testified after the January 17, 2014 evaluation, she had no knowledge who was responsible for ensuring plaintiff was timely treated by an oral surgeon and had no control over when plaintiff was evaluated by an oral surgeon. (ECF No. 142 at 39-40, Watson-Montgomery Dep 142:7-13; 146:19-147:1.)

36. [a] In her experience, the pain associated with wisdom teeth is intermittent (Ex. C Dr. Montgomery dep 147:9-12) [b] The protocol for treating a detainee who needs to have a wisdom tooth extracted is to put in the referral and then see and [c] treat the plaintiff for the intermittent pain if it arises while the detainee is waiting. (Ex. C Montgomery dep at 149:20-24-150:1)

RESPONSE: [a] Agree this is her testimony.

[b] Disputed this is the protocol at the Jail. Dr. Watson-Montgomery testified her practice was to refer certain grossly decayed teeth to the oral surgeon. (ECF No. 51-4 at 9, Watson-Montgomery Dep 25:2-9.) Dr. Watson-Montgomery testified treatment was not complete until the tooth was surgically removed. (*Id.* at 11-45, Watson-Montgomery Dep 165:21-166:5.)

[c] Agree this is her testimony.

37. The priority system that was in place in 2014 for an inmate to see the dentist was that a paramedic or a nurse triaged health service request forms and dispensed them to the provider clinic that as is necessary. (Ex. C Dr. Montgomery dep 59:2-6)

RESPONSE: Agree.

38. Dr. Montgomery has been named in her individual capacity and she filed the affirmative defense of qualified immunity with her Answer and Affirmative Defenses. (Dkt#8)

RESPONSE: Agreed.

-9-

**Overall Healthcare for Plaintiff**

39. As a diabetic, Plaintiff was seen by a nurse twice a day to have his blood sugar checked. If necessary, he would be given an Insulin shot by the nurse. (Ex. A Riley dep at 16, 18:12-18) The nurses also gave him Ibuprofen (Ex. A Riley dep 19:1-16)

RESPONSE: Agree.

40. The divisions in which Mr. Riley was housed in 2, 8, and 10 are medical divisions. In Division 10, he was taken to the dispensary and in Division 8, the medical department is right on the wing. (Ex. A Riley dep 17:6-8)

RESPONSE: Agree.

41. There is nothing in Plaintiff's medical records to indicate that any time during 2014 Mr. Riley told his medical providers that he was having dental pain or that he needed pain killers for his teeth until September 2, 2014 after his teeth were extracted by the oral surgeon. (See Group Exhibit M which is the notes from his February, (Ex. M at p. 4) April, (Ex. M p. 5-7 and September Ex. M at 11)

RESPONSE: Disputed. Plaintiff Submitted a HSR form on January 13, 2014 indicating a "toothache." (ECF No. 51-5 at 2, Exhibit D at 1.) Another HSR form was submitted by plaintiff on May 4, 2014 indicating a toothache. (*Id.* at 7, Exhibit D at 6.) On July 22, 2014 plaintiff submitted another HSR form indicating his toothache was a 10, and that "it is hard for me to eat and sleep due to pain." (*Id.* at 11, Exhibit D at 10.)

42. On September 2, 2014, Plaintiff asked his primary doctor and was given pain medication for the post-tooth extraction. (Ex. M p. 11)

RESPONSE: Agree, but not material.

**Americans with Disability Act/RHA Claim**

43. Despite his diabetes, Plaintiff is capable of using a standard toilet to relieve himself. (Ex. A Riley dep at 37:1-2) There was a regular toilet in his cell. (Ex. A, Riley dep at 46:1-2)

RESPONSE: Objection, mischaracterizes plaintiff's testimony. At the time of plaintiff's deposition on March 28, 2016, he was able to use a standard toilet. (ECF No. 51-2 at 11-12, Riley Dep. at 36: 23-37:2.) But when plaintiff was incarcerated at the Cook County Jail, he was unable to use a standard toilet at all

times due to his "feet was swollen at the time. That's why they gave me a cane and they gave me a wheelchair." (*Id.* at 12, Riley Dep. at 37:3-9.)

44. Although it was painful sometime to walk, he could stand up and walk to a toilet. (Ex. A Riley dep at 38:1-12).

RESPONSE: Objection, mischaracterizes plaintiff's testimony. When plaintiff was provided a wheelchair to attend court, he was not allowed to leave his wheelchair unattended. (ECF No. 52-2 at 12 at 37:15-38:12.)

45. He was prescribed a wheelchair for long distances by a Cermak doctor (Ex. J Order for Wheelchair) and every time he went to court he had a wheelchair. (Ex. A Riley dep 46:21-22)

RESPONSE: Agree.

46. The Leighton Criminal Courthouse was built before 1992 and therefore the ADA and RHA structural requirements do not apply. 28C.F. R. 35.151; *Lacy v. Dart* (2015 U. S. Dist LEXIS 13825 *4 14C6259 October 8, 2015 J. Gettleman)

RESPONSE: Agree.

47. [a] Plaintiff testified that he had to wheel himself through the tunnel to where the elevators are up a steep ramp but [b] that he never filed a grievance about it. (Ex. A Riley dep at 40:17-18, 21-23)

RESPONSE: [a]    Agree.

[b]    Disputed and mischaracterized cited testimony. In response to the question "Do you recall if you ever filed any grievances out about a ramp?" plaintiff testified "I put in about the accessibility of going back and forth to court." (ECF No. 51-2 at 12, Riley Dep. at 40:21-24.)

48. It is the responsibility of the Sheriff's office to transfer the wheelchair bound detainees through the tunnel from the CCDOC to the Criminal Courthouse. (Ex. N Bank dep at 30:9-15)

RESPONSE: Agree.

49. Plaintiff never missed a court appearance. (Ex. A, Riley dep at 56:20-23)

RESPONSE: Agree.

50. There are internal memoranda directing Sheriffs employee's to assist detainees in wheelchairs when using the toilet. (Ex. N Memoranda pp.54-56)

RESPONSE: Objection, the cited record does not include any internal memorandum directing Sheriff's employees to assist detainees in wheelchairs when toileting. Moreover, Mr. Banks only testified about watching a Power Point demonstration for a portable chair, but was unable to testify about the specifics of the training. (ECF No. 51-15 at 17, Banks Dep. at 55:19-56:15.)

/s/ <u>Patrick W. Morrissey</u>
Patrick W. Morrissey
10150 S. Western Ave., Suite Rear
Chicago, IL 60643
(773) 233-7900

*Attorney for Plaintiff*