# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY RILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15 C 8221 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| THOMAS DART, Sheriff of Cook County, ) | |
| COOK COUNTY, ILLINOIS, and ) | |
| MELANIE WATSON-MONTGOMERY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Riley, a former pre-trial detainee at the Cook County Department of Corrections ("CCDOC"), brings this lawsuit against defendants alleging constitutional violations under 42 U.S.C. § 1983 and ADA and Rehabilitation Act violations under Section 202 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act ("RHA"), 29 U.S.C. § 794(a). Plaintiff alleges that defendants caused him to experience pain, suffering, and injury when deficiencies in the CCDOC's staffing and transportation of inmates to Stroger Hospital caused a delay in receiving dental care. Additionally, plaintiff alleges ADA and RHA claims against Dart and Cook County for failing to (1) provide restroom facilities in the holding area at the Leighton Courthouse where wheelchair detainees were housed awaiting court appearances, and (2) assist detainees up and down a steep ramp in the basement of the courthouse. Before the Court are defendants' motions for summary judgment [50] and [53]. For the reasons set forth below, defendants' motions are granted in part. Status set for October 11, 2018 at 9:30 a.m.

**FACTS**

Plaintiff was a pre-trial detainee at the Jail from November 7, 2013 to December 22, 2014. During that time, he was housed in medical divisions 2, 8, and 10, spending most of his time in Division 10. Plaintiff is diabetic and had neuropathy in his feet during the relevant time period, which made it painful for him to walk and required him to use a cane. Plaintiff was prescribed a wheelchair for long distance travel by a Cermak[1] doctor, which he used every time he went to court. Plaintiff visited the dispensary every day to have his glucose level checked and to receive insulin and ibuprofen as necessary.

Dart is the Sheriff of Cook County and is responsible for operating the CCDOC, which includes the Jail. He is also responsible for transferring wheelchair-bound inmates to the Leighton Criminal Courthouse for court proceedings.

The Cook County Health and Hospitals System ("CCHHS"), through Cermak Health Services of Cook County ("Cermak"), provides health care and mental health care services to detainees incarcerated in the Jail. On January 28, 2011, Dart and CCHHS entered into an Inter-Agency Agreement (the "Agreement") whereby they "acknowledge[d] their mutual responsibility and interdependence in meeting the health care needs of detainees consistent with the safety and security of detainees and staff." (Dkt. 60, Ex. 1, p. 1.) Pursuant to the Agreement, Dart and Cermak agreed to engage in a coordinated approach to provide health care to detainees, accommodate secured locked boxes in each living unit, make Cermak health service request forms ("HSRF") readily available for detainees to use, and hold meetings with Cermak to address issues of joint concern.

---

[1] Cermak is the hospital at the CCDOC.

At all times relevant to this suit, Dr. Watson-Montgomery was a dentist employed by Cook County to work at the Jail. She has been a dentist since 1988 and has been employed full time at Cermak since 2009. During the relevant time period, Dr. Watson-Montgomery was a dentist in Division 10; CCDOC did not employ an oral surgeon. Dr. Watson-Montgomery testified that she has an open-door policy with the nursing staff in Division 10 whereby nursing staff could bring her an HSFR and request that a patient be seen immediately.

**Plaintiff's Dental Issues**

A few weeks after entering CCDOC in 2013, one of plaintiff's teeth fell out while he was eating, causing pain in the back-right side of his mouth. A correctional officer informed the dental clinic of the incident and sent plaintiff to see the dentist. A week later a correctional officer requested pain medication for the plaintiff after receiving numerous complaints that he was in pain. Plaintiff received this pain medication roughly two weeks later.

The Jail's dental care policy in 2013 and 2014 required an inmate to fill out a Health Service Request Form ("HSRF") and drop it in the health service box dispensary. A nurse or other healthcare professional would review the request and determine the appropriate action.

On January 13, 2014, plaintiff completed an HSRF for his tooth, which was given to the dental department on January 14, 2014. On January 17, 2014, Dr. Watson-Montgomery examined plaintiff. She performed an oral exam, took x-rays, and recorded that plaintiff had gross decay and irreversible pulpitis[2] in tooth 32, a wisdom tooth, but noted no abscess. Dr. Watson-Montgomery noted that plaintiff suffered pain at a level of nine on a scale of one-to-ten. She prescribed plaintiff Motrin and Amoxicillin for ten days, explained that the course of treatment required surgical

---

[2] Irreversible pulpitis is a condition in which the nerve inside the tooth has had inflammation for an extended period that it is not clinically reversible, which causes pain.

3

extraction of the tooth, and made an electronic referral for an oral surgeon at Stroger to extract tooth 32. Dr. Watson-Montgomery did not extract plaintiff's tooth because she believed that the procedure would best be performed and managed by an oral surgeon. There is no policy indicating which dental procedures should be referred out to an oral surgeon, and it was typical for Dr. Watson-Montgomery to refer a wisdom tooth extraction to an oral surgeon. Dr. Watson-Montgomery testified that wait times for oral surgery vary among inmates and that no dentist at Cermak can prioritize when an inmate is seen by an oral surgeon at Stroger. Dr. Watson-Montgomery had no control over when oral surgery patients are seen, nor did she control the transportation or prioritization of detainees taken to the hospital. Some patients do not return to the clinic after receiving pain medication because wisdom tooth pain can be intermittent.

On March 25, 2014, plaintiff was transported to Stroger Hospital, examined by an oral surgeon, and scheduled to have his tooth removed.

On May 4, 2014, plaintiff submitted another HSRF for his tooth and was seen by Dr. Watson-Montgomery at the dental clinic on May 7 and May 9, 2014. She again prescribed Motrin and Amoxicillin and referred plaintiff to the oral surgeon a second time.

On June 27, 2014, plaintiff filed a grievance concerning his dental pain. Plaintiff submitted another HSFR on July 22, 2014, and Dr. Watson-Montgomery examined him on August 4, 2014. During that appointment, Dr. Watson-Montgomery noted plaintiff's complaints of tooth pain and delayed removal. She also called scheduling and learned that plaintiff's surgery was scheduled for August 29, 2014.

On August 29, 2014, an oral surgeon removed plaintiff's wisdom teeth, numbers 31 and 32, during a successful surgery at Stroger. After the surgery, plaintiff no longer complained of tooth pain.

**Transportation of Wheelchair-Bound Inmates**

The Sheriff's office is responsible for transferring wheelchair-bound inmates through the tunnel connecting the CCDOC and the Leighton Courthouse for court proceedings. Wheelchair-bound inmates are staged outside the bullpen area where unassisted inmates are held. The Leighton Criminal Courthouse was built before 1992 and therefore the ADA and SHA structural requirements do not apply. Sheriff's office personnel are required to go through ADA training, and court services have several policies regarding wheelchair-bound inmates, including (1) bringing them to court last, (2) not holding them in bullpens behind the courtroom for extended periods of time, and (3) taking them to a public washroom in case of emergency.

Plaintiff testified that he had to wheel himself through the tunnel and up a steep ramp to the elevators when he went to court. Despite having to do so, he never missed court. Plaintiff was allowed to take his cane to court. When at the Leighton Courthouse, he was placed in the bullpen behind the courtroom alone after the other inmates had cleared out. The bullpen in the courthouse is divided into two parts. Plaintiff had to stand up and walk into the first part because his wheelchair was too wide. The toilet is located in the second part of the bullpen, and the door separating the two sections is always left open.

During the relevant time period, the bullpens adjacent to the courtrooms at Leighton Courthouse did not have handicap toilets and Sheriff's staff was required to transport wheelchair-bound inmates to a public restroom. Normally, plaintiff was held in the bullpen for five or ten minutes before being wheeled into the courtroom. At his court date on October 20, 2014, plaintiff had to wait in the bullpen for an unclear amount of time to see the judge because of a trial in the courtroom. He made an oral request to use the ADA bathroom while waiting in the bullpen. Fifteen minutes after the request was made, plaintiff urinated on the floor of the bullpen.

**STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). It is well settled that at the summary judgment stage, the court does not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; those are jury functions. *See Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014).

**ANALYSIS**

As an initial matter, the Court notes that plaintiff has dismissed his individual capacity claim against Sheriff Dart (dkt. 41) and has abandoned Claim I regarding the Jail's inability to timely provide Plaintiff with a face-to-face assessment in response to his complaint of dental pain. (Dkt. 61, p. 1. fn. 1.) Defendants move for summary judgment on plaintiff's remaining claims.

**Deliberate Indifference - Dr. Watson-Montgomery**

Dr. Montgomery argues that plaintiff's dental condition did not constitute a serious medical condition given the standard of treatment to monitor and treat pain as needed before extraction,

and that even if it was a serious medical condition, her treatment of the plaintiff did not constitute a knowing refusal to alleviate the pain of his condition. Dr. Montgomery further asserts that she is entitled to qualified immunity as a public official sued in her individual capacity who did not knowingly violate a clearly established constitutional right of the plaintiff. Plaintiff argues that there are issues of material fact as to whether Dr. Montgomery knew of plaintiff's serious medical condition and knowingly refused to alleviate his pain.

Deliberate indifference to a serious medical need has both an objective and subjective component. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). To satisfy the objective element, a plaintiff must show an "objectively serious medical need," whereby such a need is considered adequately serious if the condition has been "diagnosed by a physician as mandating treatment" or the condition is so obvious that "even a lay person would perceive the need for a doctor's attention." *Id.* (quoting *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012)). To satisfy the subjective element, the plaintiff must show the defendants knew of his serious medical need and were "deliberately indifferent to it." *Id.* (citing *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)).

Here, the objective element of deliberate indifference has been met. Dr. Montgomery timely evaluated plaintiff, concluded he had irreversible pulpitis in a wisdom tooth and referred him to an oral surgeon to have it removed. Plaintiff was then evaluated by an oral surgeon at Stroger Hospital in March of 2014 and scheduled for an appointment to extract the tooth which occurred on August 29, 2014. A dentist and oral surgeon both diagnosed the condition as requiring treatment and ultimately surgery. Accordingly, plaintiff's pulpitis in his wisdom tooth constituted an objectively serious medical need. *See, e.g., Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (holding that tooth decay is an objectively serious medical condition due to the pain and risk

7

of infection it poses); *Evans v. Dart*, No. 09-CV-04853, 2015 WL 5675012, at *3 (N.D. Ill. Sep. 24, 2015) (holding that a wisdom tooth diagnosed as needing extraction, for which the patient was prescribed antibiotics and painkillers, is an objectively serious medical condition).

However, no reasonable jury could find that Dr. Montgomery acted with deliberate indifference to plaintiff's serious medical need. After the plaintiff submitted several HSRFs, Dr. Montgomery saw plaintiff and provided him with a ten-day supply of painkillers and antibiotics. In line with common practice, Dr. Montgomery waited to see if plaintiff's pain could be managed with painkillers and antibiotics. She referred plaintiff to an oral surgeon at Stroger Hospital at least twice. She was not personally responsible for or able to control when the plaintiff's operation was scheduled. Further, plaintiff was intermittently provided ibuprofen as needed by the nurses checking his insulin levels twice daily. These actions do not constitute deliberate indifference to plaintiff's tooth pain and a reasonable jury could not find otherwise. Accordingly, summary judgment is granted as to defendant Dr. Montgomery.

*Monell* **Claims Regarding Dental Care**

Defendant Cook County argues that there is insufficient factual evidence to show that plaintiff's alleged injury was caused by an unconstitutional policy or practice because wisdom tooth pain is intermittent in nature and plaintiff was seen by medical personnel daily, he saw the dentist, and he was given painkillers whenever he complained of tooth pain. Cook County also argues that plaintiff does not have a constitutional right to a particular course of treatment or the best course of treatment, and thus does not have a constitutional right to an onsite oral surgeon at CCDOC. Defendant Dart joins the County's contention that an inmate has no constitutional right to an onsite oral surgeon, and further asserts that the County is responsible for medical staffing at

8

the Jail. Dart also argues that there is insufficient evidence to show that the policy limiting the transport of inmates to Stroger was the moving force behind his inability to obtain oral surgery.

Plaintiff sets forth numerous arguments against Dart in his official capacity and Cook County in an attempt to establish a deliberate indifference *Monell* claim against both defendants regarding his delay in receiving dental treatment. Plaintiff presents a Department of Justice ("DOJ") Report from 2008 indicating inadequacies in the levels of medical care and specifically of dental personnel staffed at Cermak, and the dental director at Cermak's belief that it was necessary to employ an oral surgeon. Plaintiff also argues that Cermak's policies of not employing an oral surgeon and limiting the number of inmates transported to Stroger Hospital on a daily basis delayed plaintiff's ability to obtain prompt dental care and caused him to experience pain. Lastly, plaintiff argues that the evidence he advances was the same considered in *Evans*, in which defendant's motion for summary judgment was denied as a triable issue of material fact existed regarding the Sheriff's provision of dental care to CCDOC detainees, and, thus, *Evans* should guide the Court's decision here.

A plaintiff may bring an action against a municipality based upon allegations of a deprivation of his constitutional rights. *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). To establish municipal liability, plaintiff must show the existence of an "official policy" that is the "moving force" behind the alleged rights deprivation. *Id.* An official policy can be established through: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 834 (quoting *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)). Plaintiff's claims

9

against defendant Dart in his official capacity are treated the same as the claims against defendant Cook County itself. *See Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citing *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006)).

Plaintiff relies heavily upon *Evans* in arguing his position, however the case at hand departs from *Evans* in several significant ways. In *Evans*, the plaintiff filed six grievances over a period of several months complaining of tooth pain that was not relieved by Tylenol and asking to be taken to an oral surgeon at Stroger Hospital, in addition to several HSRF submissions. 2015 WL 5675012, at *2. In this case, plaintiff was seen by a dentist after each HSRF submission and after the one grievance he filed. Plaintiff was also given Motrin and Amoxicillin to treat his symptoms. In *Evans*, the dentist determined that it was "urgent" for an oral surgeon to consult regarding plaintiff's wisdom tooth. *Id.* Here, no such urgency was noted. In *Evans*, after the plaintiff was transferred back to CCDOC from the Illinois Department of Corrections, he received no dental care of any kind for four months until his tooth was extracted, which occurred roughly two months after it was originally scheduled. *Id.* at *2-3. Here, the evidence does not indicate that there was a significant delay in the extraction of plaintiff's diseased tooth. Dr. Montgomery saw plaintiff several times, including a few weeks before his surgery, and gave him Motrin and Amoxicillin as needed to ease his pain, all of this notwithstanding that plaintiff saw nurses in the medical unit twice per day and was given ibuprofen for pain management upon request. Furthermore, the 2008 DOJ Report on the adequacy of medical care covered the time the *Evans* plaintiff spent in CCDOC custody; it is not a given that it represents the state of affairs of the dental care the CCDOC provided in 2014 when Mr. Riley was incarcerated there.

In addition to the above, there is no indication that any of the policies highlighted by plaintiff were the moving force or cause of plaintiff's alleged injuries. Although, as noted above, plaintiff's

medical condition was objectively serious, the undisputed facts show that every time plaintiff submitted an HSRF, he was seen by CCDOC staff and given antibiotics and painkillers for his tooth, after which there were no additional complaints for several weeks. The condition of plaintiff's wisdom tooth was never marked as urgent or anything that needed to be taken care of immediately, as was the case in *Evans* described above. There is no indication that transportation shortages delayed his treatment in any way, as there was no problem getting him to Stroger for his March 2014 appointment or for his scheduled extraction in August. In sum, plaintiff fails to submit evidence that any policy was the cause for any delay in treatment. For these reasons, summary judgment is granted in favor of defendants on this claim.

**ADA and RHA Claims Against Sheriff Dart and Cook County**

Plaintiff alleges statutory claims under the ADA and RHA relating to a ramp he had to traverse at the Leighton Courthouse, as well as the insufficient bathroom facilities in the court's bullpen area. Plaintiff contends that he has a qualifying disability under the statutes and that collateral estoppel (based on several decisions in *Lacy v. Dart*, No. 14-CV-06259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015) and No. 14-CV-06259, 2015 WL 7351752 (N.D. Ill. Nov. 19, 2015)) bars relitigation of the issues of whether the bullpen restroom facilities and Leighton Courthouse ramp violated the ADA. Defendants make several arguments in support of their motions for summary judgment, including an argument that issue preclusion does not apply. Notably, both parties dedicate most of their ADA and RHA arguments to the *Lacy* cases and issue preclusion.

Since the briefing of the motions, the Seventh Circuit affirmed in part, vacated in part, and remanded in part several of the *Lacy* decisions, No. 14 C 6259, 2015 WL 1995576 (N.D. Ill. Apr. 30, 2015), 2015 WL 5921810 (N.D. Ill. Oct. 8, 2015), and 2015 WL 7351752, (N.D. Ill. Nov. 19,

11

2015).  *See Lacy v. Cook County*, 897 F.3d 847 (7th Cir. 2018).  In relevant part, the Seventh Circuit vacated the district court's grant of partial summary judgment and remanded the matter for a jury trial on the question of ADA liability.  *Id*. at 861.  The Seventh Circuit also vacated the district court's October 8, 2015 judgment regarding the merits of the plaintiff's first equitable claim.  *Id*. at 862.  Given the parties' heavy focus on the district court's decisions in *Lacy* and the recent Seventh Circuit opinion, the Court reserves ruling on this claim and directs the parties to be prepared to discuss the next steps during a status set for October 11, 2018.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment [50] and [53] are granted in part.  A status hearing is set for October 11, 2018 at 9:30 a.m.

**SO ORDERED.**  ENTERED: **September 24, 2018**

_____
**HON. JORGE ALONSO**
**United States District Judge**